## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Jolene J.-D., | No. 23-cv-2297 (JMB/DLM) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Martin J. O'Malley,<br>Commissioner of Social Security<br>Administration, | |
| Defendant. | |

Pursuant to 42 U.S.C. § 405(g), Plaintiff Jolene J.-D. seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for benefits. This matter is before the Court on the parties' briefs seeking judgment on the administrative record. (Docs. 15 (Plaintiff's motion), 17–18 (Commissioner's motion and memorandum), 20 (Plaintiff's reply memorandum).) The case has been referred to the undersigned magistrate judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. For the reasons which follow, the Court recommends that Plaintiff's motion be granted, the Commissioner's motion be denied, and the matter be remanded for further proceedings consistent with the findings below.

## BACKGROUND

On February 12, 2021, Plaintiff applied for Supplemental Security Income ("SSI"), alleging she had been disabled since September 1, 2020. (Tr.[1] at 247–56.) The Social Security Administration denied her claim initially (Tr. at 105–06), and upon reconsideration (Tr. at 122). Plaintiff then timely requested a hearing before an Administrative Law Judge ("ALJ"), and the ALJ held a hearing on the matter on June 9, 2022. (Tr. at 154–57 (request for hearing), 51–75 (hearing transcript)). Plaintiff was assisted at the hearing by a non-attorney representative, and testified on her own behalf. (Tr. at 17, 51, 53, 57–69.) A vocational expert also testified, concluding that there were jobs in the national economy suitable for a person with physical and mental limitations similar to Plaintiff's. (Tr. at 69–74.) Plaintiff's counsel did not ask any questions of the vocational expert. (Tr. at 74.)

On July 26, 2022, the Commissioner sent notice of an unfavorable decision to Plaintiff. (Tr. at 14–40.) The ALJ recognized that Plaintiff suffered from several severe impairments, including "cervical and lumbar disc disease status post anterior cervical arthroplasty, cervical myelopathy, chronic neck pain, right, foot drop, asthma, depression, anxiety, obesity, bipolar disorder, and panic disorder with agoraphobia." (Tr. at 19–20.)

Despite Plaintiff's mental and physical impairments, the ALJ found that she did not qualify for benefits. (Tr. at 18.) First, the ALJ determined that Plaintiff retained the residual

---

[1] The Commissioner filed the consecutively paginated transcript of the administrative record on November 28, 2023. (Doc. 14.) For ease of reference, citations to the transcript will identify the page number listed on the lower right corner of the cited document rather than docket page number.

functional capacity ("RFC") to perform sedentary work as defined by 20 C.F.R. § 416.967(a),[2] provided the job included additional limitations to account for Plaintiff's additional impairments. (Tr. at 23.) Relevant to this review, the RFC included a limitation to occasional interactions with supervisors, coworkers, and the public. (*Id.*)

Next, the ALJ credited the testimony of the vocational expert that although Plaintiff could no longer perform her past relevant work, there were at least three representative occupations listed in the Dictionary of Occupational Titles ("DOT") that could be performed by a person with similar limitations to Plaintiff: document preparation clerk (DOT No. 249.587-018);[3] sorter (DOT No. 521.687-086); and inspector (DOT No. 669.687-014).[4] (Tr. at 33.) Because there were sufficient jobs available in the national economy for someone with Plaintiff's limitations, the ALJ found her not disabled under the evaluative process set forth in 20 C.F.R. § 416.920. (Tr. at 34.)

Plaintiff does not challenge any of the ALJ's determinations on her physical impairments or limitations. Rather, Plaintiff asserts the ALJ legally erred in evaluating her mental impairments. Specifically, Plaintiff claims the ALJ erred by failing to explain why he found the state agency psychologists' opinions persuasive as to Plaintiff's moderate

---

[2] By regulation, "a sedentary job is defined as one which involves sitting," even if "walking and standing are required occasionally." 20 C.F.R. § 416.967(a).

[3] The vocational expert clarified that the occupation of a document preparation clerk has changed since the DOT's last update in 1991, shrinking to far fewer available positions because documents are now more easily moved to electronic databases rather than painstakingly entered into microfiche programs. (Tr. at 73.)

[4] The vocational expert clarified that the occupations of sorter and inspector are "DOT exemplars," which she explained means they used to be associated with certain employers, but that they now "cut across employer type and product type without change in the essential functions of the occupation." (Tr. at 72.)

3

social functioning but then did not adopt their recommended social limitations in fashioning Plaintiff's RFC. Both of the state agency psychological experts, David Biscardi, Ph.D., and Ray Conroe, Ph.D., L.P., opined that Plaintiff could only tolerate brief, superficial, and infrequent interactions with co-workers, supervisors, and the public. (Tr. at 92, 101 (Dr. Biscardi); *accord* Tr. at 114 (Dr. Conroe).) The ALJ found, however, that Plaintiff could tolerate "occasional" interactions with supervisors, coworkers, and the public. (Tr. at 23, 32.) According to Plaintiff, the ALJ provided no explanation of why he accepted of the state experts' prior administrative medical findings about the limitation on the quality of her workplace interactions, and then failed to include any such limitation when crafting Plaintiff's RFC.

## ANALYSIS

This Court reviews an ALJ's denial-of-benefits decision to determine whether it is supported by substantial evidence in the record as a whole, and whether the decision is infected by legal error. 42 U.S.C. § 405(g); *Austin v. Kijakazi*, 52 F.4th 723, 728 (8th Cir. 2022). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotations omitted); *see also Nash v. Comm'r, Soc. Sec. Admin*, 907 F.3d 1086, 1089 (8th Cir. 2018) (characterizing "substantial evidence" as "less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's conclusions"). Courts reviewing ALJ decisions must look to the entire administrative record to ascertain whether it contains sufficient evidence to support the ALJ's conclusion. *Grindley v. Kijakazi*, 9 F.4th 622, 627 (8th Cir. 2021). When substantial

4

evidence supports the ALJ's decision, the Court will not reverse, even if substantial evidence also supports a contrary outcome. *Nash*, 907 F.3d at 1089. But if an ALJ fails to explain their evaluation of the persuasiveness of the record's prior administrative medical findings, that is a legal error subject to de novo review. *Joel M. B. v. Kijakazi*, No. 21-cv-1660 (PAM/ECW), 2022 WL 1785224, at *2 (D. Minn. June 1, 2022) (citing *Collins v. Astrue*, 648 F.3d 869, 871 (8th Cir. 2011)); *Michael B. v. Kijakazi*, No. 21-cv-1043 (NEB/LIB), 2022 WL 4463901, at *1 (D. Minn. Sept. 26, 2022).

Plaintiff does not contest that the ALJ followed the five-step sequential process laid out in 20 C.F.R. § 416.920(a)(4)[5] for evaluating SSI claims. Rather, Plaintiff asserts that in determining her RFC, the ALJ inexplicably omitted certain limitations recommended by two state psychological experts that were consistent with and supported by other evidence in the record, resulting in an RFC that did not reflect her actual impairments, and did so without the explanation legally required under 20 C.F.R. § 416.920c. Plaintiff points out that Drs. Biscardi and Conroe both opined that Plaintiff's workplace interactions must be

---

[5] Step one of this process involves determining whether a claimant is engaged in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(i). If not, the ALJ must next decide (in step two) whether the claimant's impairments are severe, and of a duration of least 12 continuous months. *Id.* § 416.920(a)(4)(ii). At step three, the ALJ determines whether the claimant's impairments are severe enough to equal a listed impairment under Appendix 1 to Subpart P of Part 404. *Id.* § 416.920(a)(4)(iii). If so, the claimant is considered disabled without further inquiry. If not, the ALJ must determine the claimant's RFC, and decide (at step four) whether the claimant can still do their past work given their limitations. *Id.* § 416.920(a)(4)(iv). Finally, if the ALJ concludes a claimant cannot perform their prior work, step five requires the ALJ to determine whether they can do other work considering their RFC, age, education, and work experience. *Id.* § 416.920(a)(4)(v).

"brief," "superficial," and "infrequent,"[6] (Tr. at 92, 114), but that the ALJ omitted the "brief" and "superficial" limitations from Plaintiff's RFC, instead finding that Plaintiff could tolerate "occasional" workplace interactions without comment on the length or quality of each contact. (Tr. at 23.) In doing so, the ALJ determined that Plaintiff had a moderate limitation in her ability to interact with others. (Tr. at 22.) The ALJ reached this conclusion because, despite Plaintiff's subjective claims that she struggles to get along with other people, she also claimed she could interact well with authority figures and others in the workplace, has never been forced to leave a job because of an inability to sustain contact with others, could go shopping, and was found cooperative and pleasant by medical professionals. (*Id.*)

Additionally, although the ALJ notes that—including Drs. Biscardi and Conroe—no less than five medical professionals found Plaintiff could tolerate only "brief" and "superficial" contact with others in the workplace (*see* Tr. at 30 (James Huber, Ph.D.), 31 (Alford Karayusuf, M.D.; Donald Wiger, Ph.D.; and Drs. Biscardi and Conroe)), the ALJ nevertheless explained why he found these portions of their opinions and prior administrative medical findings unpersuasive. As to Dr. Huber's opinion, the ALJ noted that Plaintiff endorsed getting along "pretty well" with figures of authority and others in the workplace and had not experienced any adverse employment actions from an inability to interact with others. (Tr. at 30.) The ALJ also found Dr. Huber's assessment contradicted

---

[6] Plaintiff focuses most of her argument on the difference between "superficial" and "occasional," but the Court observes that there are also differences between "brief" and "occasional" which merit further consideration in the Court's analysis.

other record evidence that Plaintiff could shop in stores in the public and was described by medical professionals as cooperative and pleasant. (*Id.*) As to Dr. Karayusuf's findings, the ALJ observed that Dr. Karayusuf did not define "brief, superficial, infrequent interactions" using terms with vocational relevance, and that, regardless, the ALJ still accounted for Plaintiff's moderate limitations in her ability to interact with others. (Tr. at 31.) As to Dr. Wiger's opinion, the ALJ similarly found Dr. Wiger did not define "brief and superficial" or "relate appropriately" in vocationally relevant terms. (*Id.*) As to Drs. Biscardi and Conroe's findings, the ALJ cited the same failure to define "briefly/superficially" with vocationally relevant language, noting that even if they had, the ALJ had still accounted for Plaintiff's moderate limitations in interacting with others in the RFC. (*Id.*)

For his part, the Commissioner responds that the ALJ properly considered all of the record evidence, including the partially persuasive findings of Drs. Biscardi and Conroe and the testimony of the vocational expert, and translated vague terminology in the findings into the vocationally relevant language required in an RFC. The Commissioner points out that under Eighth Circuit caselaw, an ALJ need not use the verbatim language of a medical professional or expert to describe a plaintiff's functional limitations. And the Commissioner asserts that it is for the ALJ to weigh the evidence, while the Court's role is to determine whether substantial evidence in the record supports the ALJ's conclusions. Finally, the Commissioner argues that it was only when Plaintiff retained new counsel that Plaintiff's mental health concerns became a disputed issue, and that the Court should take that into consideration.

Plaintiff challenges the Commissioner's response. In her reply, she argues that even though the ALJ can decide not to adopt functional limitations offered by medical professionals' opinions and findings or can substitute different terms with different meanings to characterize those functional limitations (including vocationally relevant terms), what an ALJ cannot do is fail to explain why they departed from medical findings or opinions about a plaintiff's functional limitations. If "occasional" encompasses "superficial" and "brief" then, according to Plaintiff, the ALJ has not explained how. Likewise, Plaintiff contends that if "occasional" represents an intentional decision not to adopt the qualifiers of "superficial" and "brief" for Plaintiff's social interaction limitations, then the ALJ has not explained why he concluded that "superficial" and "brief" (or any vocationally relevant qualifiers with these meanings) should be omitted from Plaintiff's RFC. Plaintiff argues that this lack of an explanation is the crux of the issue here, and the Commissioner's focus on the substantial evidence standard misses the point of Plaintiff's challenge.

## I.    THE ALJ ERRED BY FAILING TO SUFFICIENTLY EXPLAIN THE SOCIAL INTERACTION LIMITATIONS THAT HE INCLUDED IN PLAINTIFF'S RFC.

Plaintiff filed her claim on February 12, 2021, so 20 C.F.R. § 416.920c governs how an ALJ evaluates prior administrative medical findings of the state agency psychologists like Drs. Biscardi and Conroe. *See Pemberton v. Saul*, 953 F.3d 514, 517 n.2 (8th Cir. 2020). The regulation requires that an ALJ give a sufficient explanation for what medical provider evidence they find persuasive or unpersuasive and at least explain the supportability and consistency of what they find persuasive or unpersuasive. 20 C.F.R. §

416.920c(a), (b)(2). While "supportability" and "consistency" are terms of art, the regulations indicate that, as used in this context, the words mirror their everyday meaning: supportability means that a prior administrative medical finding will be considered more persuasive the more it is supported by objective medical evidence; consistency means that a prior administrative medical finding will be more persuasive if it is consistent with the other medical and nonmedical sources relevant to Plaintiff's claim. 20 C.F.R. § 416.920c(c)(1), (2). Provided that the ALJ's reasoning is sound and supported, they may "accept some, but not all, of a medical opinion." *Austin*, 52 F.4th at 729. But at the very least, regulations require that the ALJ explain how they considered the supportability and consistency factors in evaluating a psychological expert's prior administrative medical findings. 20 C.F.R. § 416.920c(b)(2); *Michael B.*, 2022 WL 4463901, at *2 (failure to articulate supportability analysis is a legal error that requires remand); *Bonnett v. Kijakazi*, 859 F. App'x 19, 20 (8th Cir. 2021) (per curiam) (failure to articulate consistency with the record is a legal error that requires remand).

The Court's review of this issue is further guided by two recent Eighth Circuit opinions. First, in *Wyatt v. Kijakazi*, No. 23-1559, 2023 WL 6629761, at *1 (8th Cir. Oct. 12, 2023) (per curiam), the Court held that the district court properly affirmed the ALJ's decision which adopted different limitations concerning the plaintiff's ability to engage in social interactions from those in medical evaluations. *Id.* Specifically, two state agency medical experts had recommended that the plaintiff be limited to brief, superficial, and infrequent interactions with coworkers and supervisors, while a third recommended such interactions with coworkers, supervisors, and the public be superficial. *See John W. v.*

9

*Kijakazi*, No. 22-cv-2612 (PAM/TNL), 2023 WL 2540566, at *2 (D. Minn. Mar. 16, 2023),

*aff'd sub nom. Wyatt v. Kijakazi*, No. 23-1559, 2023 WL 6629761 (8th Cir. Oct. 12, 2023).

The ALJ held that the plaintiff "requires work involving only occasional incidental

interaction with the public, and . . . [that he] cannot perform teamwork or work in tandem

with others." *Id.* (internal citation to the record omitted). The Eighth Circuit found that

because substantial evidence in the record as a whole supported the RFC determination,

the district court properly affirmed the ALJ's decision. *Wyatt*, 2023 WL 6629761, at *1.[7]

Then came *Lane v. O'Malley*, No. 23-1432, 2024 WL 302395, at *1 (8th Cir. Jan.

26, 2024) (per curiam). The *Lane* plaintiff argued that, despite two psychologists' opinions

that he should have only "superficial" workplace interactions, the ALJ's RFC improperly

substituted the term "occasional" instead. *Id.* The Eighth Circuit held that so long as an

ALJ commented on the quality of a plaintiff's workplace interactions elsewhere in the

decision—as the ALJ did by finding that the plaintiff should have "no team, tandem, or

public-facing work"—then the term "superficial" did not need to appear in the resulting

RFC. *Id.*

---

[7] While *Wyatt* is brief and focuses generally on the substantial evidence in the record
standard, some cases cited within *Wyatt* provide some additional clarification. These cases
suggest that a court should affirm an ALJ's decision where substantial evidence supports
it even if an ALJ: fails to "comment on and assign weight to" particular functional
limitations, *Swink v. Saul*, 931 F.3d 765, 770 (8th Cir. 2019); omits qualifiers on functional
limitations on social interactions likewise omitted in hypotheticals posed during the ALJ's
questioning of the vocational expert, to which a plaintiff's counsel did not object, *Webster
v. Kijakazi*, 19 F.4th 715, 719 (5th Cir. 2021); or receives testimony from the vocational
expert that the proposed occupations a plaintiff could still perform despite their limitations
did not require "a great deal of interaction with the public or coworkers" when omitting
qualifiers on such functional limitations in the RFC, *id.* (quoting *Bowling v. Shalala*, 36
F.3d 431, 436 (5th Cir. 1994)).

Courts applying *Wyatt* and *Lane* in this District have asked whether an ALJ set limits on the quality of workplace interactions despite omitting the express "superficial" qualifier, and if not, whether they explained their decision not to adopt medical professionals' determinations that a plaintiff should be qualitatively limited in their social interactions. *See, e.g.*, *Jason L. v. O'Malley*, No. 23-cv-184 (JWB/JFD), 2024 WL 965240, at *2 (D. Minn. Mar. 6, 2024) (citing *Wyatt* and *Lane*) (remanding because although "[t]he ALJ may have a valid reason for excluding the proposed superficial interaction limitation in her RFC, . . . that reason must be explained."); *Charlita N. v. O'Malley*, No. 23-cv-1283 (NEB/DTS), 2024 WL 1667155, at *1 (D. Minn. Apr. 15, 2024) (citing *Wyatt* and *Lane*) (affirming the Commissioner's denial of benefits because, although the ALJ omitted the qualifier "superficial" from the RFC, the ALJ restricted the quality of the plaintiff's social interactions to include "no tandem tasks or teamwork" and "no interactions with the general public."); *Nathan L. v. O'Malley*, No. 23-cv-1310 (JWB/DJF), 2024 WL 3015139, at *5–6 (D. Minn. May 3, 2024) (recommending remand because "[t]he ALJ did not include any limitations related to the duration or quality of Plaintiff's workplace interactions" in the RFC, did not question the vocational expert concerning whether the recommended jobs could be performed by "a person limited to brief and superficial contact," and did not provide a reviewable explanation of how the plaintiff's RFC was built to address the evidence about his impairments), *R. & R. adopted sub nom. Nathan L., Plaintiff, v. Martin J. O'Malley, Comm'r of Soc. Sec. Admin., Defendant.*, No. 23-cv-1310 (JWB/DJF), 2024 WL 3014866 (D. Minn. June 14, 2024).

Applying the law to the facts here, the Court finds that the ALJ erred in failing to adequately explain his omission of "brief" and "superficial" as qualifiers of Plaintiff's social interaction limitations. The Court prefaces this conclusion by noting two things: 1) the record is clear in multiple medical opinions and findings that Plaintiff should be limited to "brief," "superficial," and "infrequent" workplace interactions (Tr. at 30–31, 92, 114); and 2) that under the law, these terms are not interchangeable, *see Charlita N.*, 2024 WL 1667155, at *1 ("It is true that, in social security cases, 'there is a material difference between a superficial contact and an occasional contact limitation'" because "[o]ccasional contact refers to the quantity of interactions, while superficial contact refers to the quality of interactions.") (quoting *Kenneth J.V. v. Kijakazi*, No. 22-cv-373 (KMM/DJF), 2023 WL 2394397, at *10 (D. Minn. Jan. 27, 2023), *R. & R. adopted*, 2023 WL 2388696 (D. Minn. Mar. 7, 2023)); *Nathan L.*, 2024 WL 3015139, at *6 (D. Minn. May 3, 2024) ("These terms are not synonymous."); (citing *Tiffany B. v. Kijakazi*, No. 22-cv-1227 (ECT/DLM), 2023 WL 3958424, at *4 (D. Minn. May 22, 2023), *R. & R. adopted*, 2023 WL 3955348 (D. Minn. June 12, 2023) (explaining that "'brief' refers to the length of a particular interaction, and 'superficial' refers to the quality of the interaction; but 'occasional' refers to how often such interactions occur.").

Here, the ALJ only included the qualifier "occasionally" to limit Plaintiff's workplace interactions in her RFC, omitting "brief" and "superficial," but arguably capturing "infrequent." (Tr. at 23.) *See Tiffany B.*, 2023 WL 3958424, at *4 ("'occasional' refers to how often such interactions occur."). Thus, the Court's next inquiry under *Lane* is whether the ALJ limited the "the quality and duration of Plaintiff's workplace

interactions elsewhere in the Decision." *Nathan L.*, 2024 WL 3015139, at *5; *see also Lane*, 2024 WL 302395, at *1. The Court can find no such discussion anywhere in the ALJ's decision.

This brings the Court to the question of whether, if duration and quality are not otherwise provided for in the ALJ's decision, the ALJ has explained the rejection of "brief" and "superficial" (or synonymous terms) as qualifiers to Plaintiff's ability to interact socially. On this point, although some explanation is present in the ALJ's decision, it is not sufficient to clear up the gaps and inconsistencies in the analysis.

On the one hand, the ALJ explained that Dr. Huber's medical opinion was entirely *unpersuasive*, including Dr. Huber's conclusion that Plaintiff could "respond appropriately to brief and superficial contacts with coworkers and supervisors," because—according to the ALJ—Dr. Huber's opinion was not consistent with the record. (Tr. at 30.) As support for this conclusion, the ALJ cited record evidence that despite her subjective claims of having "difficulty getting along with others," Plaintiff also said she had gotten along "pretty well" with authority figures, had never lost her job because of limitations to her inability to socially interact, could shop in stores, and was described as "cooperative and pleasant" by some medical professionals. (*Id.*)

But on the other hand, the ALJ found identical conclusions in the medical opinions and findings at least partially *persuasive* in the same section of his opinion. Specifically, four other medical professionals besides Dr. Huber concluded that Plaintiff should be limited to "brief" and "superficial" workplace interactions. (Tr. at 31 (Drs. Karayusuf, Wiger, Biscardi, and Conroe).) On these opinions and findings, the ALJ determined that

13

while Plaintiff's mental impairments were not disabling, they did result in some limitations to her ability to interact in the workplace. (*Id.*) The ALJ drew these conclusions with the caveat that the descriptors used by these medical professionals were not defined by those professionals and, regardless, needed translation into vocationally relevant language.[8] (*Id.*) And herein lies an ironic problem. The Court cannot discern what the ALJ means by the terms he uses either.

Specifically, the Court is unsure whether the ALJ means that "infrequent" is the only vocationally relevant term that translates to "occasional" in the proper employment-related parlance spoken by ALJs, and that "brief" and "superficial" are vocationally irrelevant terms? Or does the ALJ mean that the vocationally relevant translation of "brief," "superficial," and "infrequent" is rolled into one term: "occasional"? Or did the ALJ intend to include vocationally relevant terms for "brief" and "superficial" but simply forgot? This opaqueness appears to be a recurring problem concerning qualifiers to a plaintiff's social interaction limitations, as noted by another court in this District recently:

> The Court cannot determine whether the ALJ intended to omit this ["brief" and "superficial"] limitation (and if so, why), whether he improperly conflated these terms, or whether he meant to substitute a more vocationally relevant term but then neglected to address the quality and duration of

---

[8] The Court notes that a medical professional may not translate their medical opinion or findings into the ultimate vocationally relevant limitation—that a person can or cannot work based on their evaluated impairments—because that opinion or finding would be disregarded as encroaching on a determination reserved to the Commissioner of Social Security. *See, e.g.*, *Twyford v. Comm'r, Soc. Sec. Admin.*, 929 F.3d 512, 518 n.5 (8th Cir. 2019) ("A medical source opinion that an applicant is 'disabled' or 'unable to work' . . . involves an issue reserved for the Commissioner and therefore is not the type of 'medical opinion' to which the Commissioner gives controlling weight.") (quoting *Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005)). Given this, it is quizzical that the ALJ trained his focus so intently on this issue.

> Plaintiff's workplace interactions elsewhere in the Decision. The Court
> should not be left "to speculate on what basis the Commissioner . . . denied
> a claim."

*Nathan L.*, 2024 WL 3015139, at *5 (quoting *Collins*, 648 F.3d at 872). The Court reaches

this same conclusion here: judicial speculation has no place in its review of an ALJ's

decision, and the Court therefore agrees with Plaintiff's position.

The Commissioner argues that the Court should not, in reviewing the ALJ's

decision, reweigh the record evidence to reach its own conclusions. The Court agrees; it

cannot resolve the lack of clarity about the qualifiers used—and not used—by the ALJ in

his decision. This is why the Court will recommend remand below. But it is a useful issue

that the Commissioner raises because it highlights an unsettled question about how to apply

*Wyatt* and *Lane*: what is the relationship between the substantial evidence in the record

standard and the requirement that an ALJ explain how their decision logically flows from

the record under caselaw and 20 C.F.R. § 416.920c—particularly where it does not adopt

some medical opinions and findings? *See, e.g.*, *Lucas v. Saul*, 960 F.3d 1066, 1069 (8th

Cir. 2020); *Jason L.*, 2024 WL 965240, at *2 ("The ALJ may have a valid reason for

excluding the proposed superficial interaction limitation in her RFC, but that reason must

be explained. Remanding the case is therefore appropriate."); *Nathan L.*, 2024 WL

3015139, at *3 (collecting cases). The Court understands the law to be that *both* must be

present: an ALJ's decision must be substantially supported by the evidence in the record,

and, where the ALJ's decision does not adopt a part of the medical findings, they must

explain why, such that their explanation is reviewable.

Additionally, Defendant argues that it was only when Plaintiff retained new counsel that Plaintiff's mental health concerns became a disputed issue, and that the Court should take that into consideration. The Court has done so but finds that whether Plaintiff's position is old or new concerning her social interaction limitations, the ALJ's decision lacks a sufficient explanation about these limitations and how he crafted Plaintiff's RFC to accommodate them.

## II.    THE ALJ'S ERROR IN FAILING TO SUFFICIENTLY EXPLAIN THE SOCIAL INTERACTION LIMITATIONS THAT HE INCLUDED IN PLAINTIFF'S RFC IS NOT HARMLESS.

Because the Court concludes the ALJ erred in failing to explain why it seemingly agreed that the record supported certain qualifiers to Plaintiff's social interaction limitations, then apparently omitted them from Plaintiff's RFC, it must determine whether the error is harmful. Harmfulness is Plaintiff's burden. *See Christopher J. B. v. Kijakazi*, No. 20-cv-2631 (JFD), 2022 WL 2806374, at *7 (D. Minn. July 18, 2022) (citing *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009); *Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012)). Specifically, Plaintiff "must provide some indication that the ALJ would have decided differently if the error had not occurred." *Byes*, 687 F.3d at 917.

Whether the error here was harmless presents a close question. The ALJ determined that someone with Plaintiff's limitations could perform the jobs of document preparation clerk, sorter, and inspector. (Tr. at 33.) As the Commissioner correctly notes, each of these jobs already assume a "Level 8" amount of interpersonal interaction, which is the lowest level recognized by the Dictionary of Occupational Titles. *See* DOT App'x B, Explanation of Data, People, and Things (identifying Level 8 interactions as "[a]ttending to the work

16

assignment instructions or orders of supervisor. (No immediate response required unless clarification of instructions or orders is needed.)"). The vocational expert also gave an explanation, testifying that for

> [i]nteraction with others, I look at the fifth digit of the DOT code. The three examples I gave is an 8. That represents the least amount of people per the DOT nomenclature. But it doesn't tell you with whom. None of these are public-facing occupations. But I have to make that distinction.

(Tr. at 74.) Plaintiff argues the ALJ's error is not harmless because it resulted in an incomplete, inaccurate RFC, and thus, a conclusion about Plaintiff's ability to perform work in the national economy that is likewise inaccurate. The Commissioner contends this alleged inaccuracy is harmless because swapping Plaintiff's requested language about the quality and duration of interpersonal interactions into her RFC would make no difference where Level 8 jobs already assume an extremely limited amount of interpersonal contact.

In prefacing the description of its eight different "levels" of "People" relationships, the DOT cautions that "each of the relationships to People represents a wide range of complexity, resulting in considerable overlap among occupations" such that "their arrangement is somewhat arbitrary and can be considered a hierarchy only in the most general sense." DOT App'x B, Explanation of Data, People, and Things (Preamble). Put more simply, the DOT's quantification of the "level" of interpersonal interaction necessary for each job is imprecise. As such, the Court declines the Commissioner's invitation to assume that each and every Level 8 job could satisfy a limitation that the claimant only have brief and superficial workplace interactions. *See, e.g.*, *Lucus*, 960 F.3d at 1070 (when

a court cannot ascertain whether the ALJ would have reached the same conclusion absent legal error, the error cannot be considered harmless).

Additionally, times have changed, as shown by the vocational expert's testimony that no occupation she cited retains its original form in the Dictionary of Occupational Titles. (Tr. at 72–73.) This makes sense, as the DOT was last updated in 1991. *See Medved v. Kijakazi*, 855 F. App'x 311 (8th Cir. 2021) (citing *Purdy v. Berryhill*, 887 F.3d 7, 14 n.10 (1st Cir. 2018)). Indeed, ALJs, vocational experts, and judges routinely acknowledge variations in jobs that have occurred since the DOT's last update. *See, e.g.*, *Svendsen v. Kijakazi*, No. 1:21-cv-1029 (CBK), 2022 WL 2753163, at *15 (D.S.D. July 14, 2022) (calling the DOT "a document that egregiously has not been updated since 1991 and is comfortably divorced from reality in 2022"); *Poole v. Kijakazi*, 28 F.4th 792, 795 (7th Cir. 2022) ("[T]he fact that the DOT was last revised before the Internet revolution means that it is a resource that must be used with care. Recognizing that the DOT is increasingly out of step with the modern economy, the [SSA] has been planning for years to replace it . . . .") (citing *Chavez v. Berryhill*, 895 F.3d 962, 965 (7th Cir. 2018)).

It is true that at her hearing, Plaintiff's non-attorney representative did not object to the single limitation—"occasionally"—that the ALJ posed in hypotheticals to the vocational expert related to Plaintiff's social interactions. (Tr. at 71.) This fact weighs against plaintiff. However, it does not outweigh the Court's concern that the ALJ also put no questions to the vocational expert about variations related to the "People" field of the jobs that the vocational expert identified. (Tr. at 74.) Absent that information, the Court could only guess whether it would change the outcome if Plaintiff were limited to brief and

superficial interactions in the workplace, in addition to occasional ones. Therefore, with an incomplete record on these points, the Court cannot find the ALJ's error in agreeing with but then omitting medical opinions and findings without sufficient explanation (and potentially misstating Plaintiff's RFC) harmless.

The Court thus recommends that this matter be remanded to the Commissioner, under sentence four of 42 U.S.C § 405(g), for the ALJ to complete the record. *See* 42 U.S.C § 405(g) ("The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.") On remand, the ALJ should: (1) explain why Plaintiff's RFC should (or should not) be further limited to brief and superficial workplace interactions; and (2) recall a vocational expert for testimony if necessary to address new hypothetical questioning based on a resulting modified RFC.

## RECOMMENDATION

Based on the above, as well as the files, records, and proceedings in this case, **IT IS RECOMMENDED** that:

1.    Plaintiff's Motion (Doc. 15) be **GRANTED**;

2.    Defendant's Motion (Doc. 17) be **DENIED**; and

3.    The matter be remanded to the ALJ for proceedings consistent with this Recommendation.

DATED:  July 1, 2024                             *s/Douglas L. Micko*
                                                                      DOUGLAS L. MICKO
                                                                      United States Magistrate Judge

**NOTICE**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served with a copy" of the Report and Recommendation.

A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).